```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
OSCAR ANTONIA FLORES PACHECO,                                          :
                                                                       :
                              Petitioner,                              :
                                                                       :
              -v-                                                      :   26 Civ. 640 (JPC)
                                                                       :
JUDITH ALMODOVAR, et al.,                                              :   OPINION AND ORDER
                                                                       :
                              Respondents.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Oscar Antonia Flores Pacheco, a noncitizen who has never been lawfully admitted into this country, has filed a habeas petition challenging his detention without a bond hearing to determine whether he poses a flight risk or danger to the community. But as this Court recently held, noncitizens like Flores Pacheco are lawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention without the possibility of bond. *See Chen v. Almodovar*, No. 25 Civ. 9670 (JPC), 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). Because Flores Pacheco cannot meaningfully distinguish his case from *Chen*, this Court's prior analysis governs, and so his habeas petition is denied.

### I. Background

**A.    Facts**

Flores Pacheco, a citizen of El Salvador, unlawfully entered the United States without admission or inspection at an uncertain place and date, in or about 2010. Dkt. 1 ("Petition") ¶ 1; Dkt. 7 ("Return"), Exh. A ("Form I-213") at 1-2; Dkt. 8 ("Petito Decl.") ¶¶ 3-4.[1] Since entering

---

[1] Docket Number 8 is a declaration from Tony Petito, Acting Assistant Field Office Director with the Department of Homeland Security's ("DHS's") Immigration and Customs Enforcement ("ICE"), New York Field Office.

the United States, Flores Pacheco has amassed a criminal record, including a 2014 conviction for disorderly conduct, a 2018 conviction for drunk driving, and a 2023 conviction once more for drunk driving. Petito Decl. ¶¶ 5-11; Return, Exh. B (criminal history). In connection with the latter crime, ICE lodged a detainer-notice of action with the Nassau County Correctional Facility, Return, Exh. C ("Form I-247"), which was not honored, and Flores Pacheco was sentenced to five years' probation. Petito Decl. ¶¶ 10-11. On January 22, 2026, at Flores Pacheco's scheduled probation check-in, DHS and ICE officers arrested him at the Nassau County Office of Probation in Mineola, New York, pursuant to a warrant. *Id.* ¶¶ 12-13; Return, Exh. D ("Form I-200"). Under the warrant, an immigration officer determined that there was "probable cause to believe that" Flores Pacheco was "removable from the United States." Form I-200; *see* Form I-213 at 2 ("Flores Pacheco was identified as being illegally present in the U.S. pursuant to an I-200 Warrant of Arrest."). That warrant was purportedly issued under Section 236 of the Immigration and Nationality Act ("INA"), *i.e.*, 8 U.S.C. § 1226. Form I-200; *see Chen*, 2026 WL 100761, at *5 (explaining that INA Section 236 is codified at 8 U.S.C. § 1226).

On January 23, 2026, Flores Pacheco was served with a Notice to Appear and charged as inadmissible under Section 212(a)(6)(A)(i) of the INA because he was "present in the United States without being admitted or paroled, or [he] arrived in the United States at any time or place other than as designated by the Attorney General." Return, Exh. E ("Notice to Appear") (quoting 8 U.S.C. § 1182(a)(6)(A)(i)). The Notice to Appear was filed with the New York Immigration Court in New York City, thus beginning removal proceedings against Flores Pacheco; he had a hearing scheduled to take place on February 2, 2026, although he has moved to continue his proceedings because of a scheduling conflict. Petito Decl. ¶¶ 15, 20.

Also on January 23, 2026, Flores Pacheco was transferred to ICE's facilities at 26 Federal Plaza in Manhattan. *Id.* ¶ 16. He was moved to a facility in Elizabeth, New Jersey on January 25,

2026, before being transferred on January 26, 2026, to Orange County Jail in Goshen, New York, where he remains detained. *Id.* ¶¶ 17-19.

**B.      Procedural Background**

On January 23, 2026, the same day he was detained at 26 Federal Plaza, Flores Pacheco filed his Petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petition ¶¶ 3-4. Flores Pacheco's Petition names as Respondents Judith Almodovar, ICE Acting Field Office Director for the New York City area; Kristi Noem, the DHS Secretary; Todd Lyons, ICE Acting Director; and Pamela Bondi, the Attorney General (collectively, the "Government"). *Id.* ¶¶ 5-8. According to Flores Pacheco, his detention violates due process and the Administrative Procedure Act because he has been detained "without any hearing to determine whether his ongoing detention is justified," and such detention is not justified because he "is neither a flight risk, nor a risk to public safety or national security." *Id.* at 5-8. He asserts that the Government cannot foreclose these challenges based on its interpretation of the INA, as "non-citizens present in the United States charged as being present without admission or parole are detained under [8 U.S.C.] § 1226(a) and therefore have the right to a bond hearing." *Id.* at 6.

That same day, the Part I judge enjoined the Government from removing Flores Pacheco from the United States or transferring him to a facility outside this District, the Eastern District of New York, or the District of New Jersey. Dkt. 2 at 1. That Order, however, made clear that it would "remain in effect unless and until it is vacated or modified by the judge who is assigned to this action." *Id.* at 2. On January 26, 2026, the case was assigned to the undersigned, who vacated the Part I Order and directed the Government to respond to the Petition by February 2, 2026, and Flores Pacheco to reply by February 6, 2026. Dkt. 4. In its Order, this Court directed the parties to identify "any basis to distinguish this case" from its recent decision in *Chen*. *Id.*

The Government filed its opposing papers on February 2, 2026. Dkt. 6 ("Opposition");

3

Return; Petito Decl.  The Government asserts that "this case is not materially distinguishable from *Chen*."  Opposition at 1.  Flores Pacheco replied on February 6, 2026.  Dkt. 9 ("Reply").  In his reply, Flores Pacheco points to two possible distinctions but otherwise "concedes that if the Court does not find his case distinguishable from *Chen* . . . , then *Chen* will control the outcome of this case."  Reply at 1-3.

## II.  Legal Standard

The writ of habeas corpus extends to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  District courts may grant such a writ "within their respective jurisdictions."  *Id.* § 2241(a).  The court must "dispose of the matter as law and justice require."  *Id.* § 2243.  Where, as here, a petition "present[s] only issues of law," the court may adjudicate it "without a hearing."  *Tumba v. Francis*, No. 25 Civ. 8110 (LJL), 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025) (quoting 28 U.S.C. § 2243).

## III.  Discussion[2]

In *Chen*, this Court addressed the question of whether "an alien who has never been lawfully admitted into this country—but has been living here nonetheless—[is] subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or alternatively entitled to a bond hearing under 8 U.S.C. § 1226(a)."  2026 WL 100761, at *1.  After "examining the plain text of Section 1225(b)(2)(A) in context of the INA's full statutory scheme," the Court concluded that for those aliens not expressly excepted from Section 1225(b)(2)(A)'s coverage, the statute's "plain language imposes two"—and only two—requirements for mandatory detention without bond: "(1) the noncitizen must be 'an applicant for admission' and (2) 'the examining immigration officer' must

---

[2] Because Flores Pacheco filed his Petition when he was detained at 26 Federal Plaza in Manhattan, Petition ¶¶ 3-4; Petito Decl. ¶ 16, this Court has habeas jurisdiction, *see Chen*, 2026 WL 100761, at *7 n.6.

4

determine that the 'alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Id.* at *1, *8 (quoting 8 U.S.C. § 1225(b)(2)(A)).  And because "an applicant for admission is someone who, under the statute, is necessarily seeking admission," Section 1225(b)(2)(A) covers "all applicants for admission, including those 'present in the United States' who have 'not been admitted' and never gained lawful entry into the country after inspection and authorization by an immigration officer, regardless of how long they have been present." *Id.* at *9, *13 (citing 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), (b)(2)(A)).  "Those applicants must be detained" without bond "when 'the examining immigration officer determines' that they are 'not clearly and beyond a doubt entitled to be admitted.'"  *Id.* at *13 (quoting 8 U.S.C. § 1225(b)(2)(A)).

This Court then explained that the petitioner in *Chen* was "covered by Section 1225(b)(2)(A)," thus requiring his detention "without a bond hearing." *Id.*  Chen was an applicant for admission—and so seeking admission—because he "arrived in the United States but was not then admitted or paroled after inspection by an Immigration Officer, meaning that he [was] an alien present in the United States who ha[d] not been admitted or paroled." *Id.* (internal quotation marks omitted); *see* 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), 1225(b)(2)(A) (providing the relevant meaning of "applicant for admission").  And an examining immigration officer had determined that Chen was not clearly and beyond a doubt entitled to be admitted: "when Chen was first arrested" upon crossing the border in California, "a Border Patrol Agent determined" that he was "inadmissible as an alien present in the United States without being admitted or paroled, or [one] who [had] arrived in the United States at any time or place other than as designated by the Attorney General." *Chen*, 2026 WL 100761, at *13 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(a)(6)(A)(i) (applicable grounds for inadmissibility).  Nor did it matter that Chen initially had been detained and released in California "purportedly under Section 1226," as his

5

"status as an applicant for admission ha[d] remained unchanged," and there was no "basis in the INA for the proposition that if an alien is released pursuant to Section 1226, any rearrest must also be made pursuant to Section 1226 with any attendant protections under that provision." *Chen*, 2026 WL 100761, at *14 (citation modified).

Because Section 1225(b)(2)(A)'s two prerequisites were met, this Court concluded that Chen was "properly detained without bond under" that provision. *Id.* And the Court rejected Chen's due process claim for two independent reasons. First, his due process claim "simply rehashe[d] his statutory claim," which this Court had just dismissed. *Id.* And second, even taking the constitutional claim on its own terms, "Chen's detention under Section 1225(b)(2)(A) comport[ed] with due process." *Id.* That was because "[d]etention during removal proceedings is a constitutionally valid aspect of the deportation process," and the Second Circuit had already recognized that "'due process does not require an *initial* bond determination for those detained under [S]ection 1226(c),' a provision mandating detention pending removal proceedings just like Section 1225(b)(2)(A)." *Id.* (first quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020), and then quoting *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024)). "[G]iven the relatively short duration of Chen's detention—under two months—any constitutional argument for habeas relief separate from the statutory one raised [t]here, if possible, would be premature." *Id.* (citation modified). So the Court denied Chen's habeas petition in full. *See id.* at *15.

*Chen* was decided "[i]n the absence of precedential authority from the Supreme Court or the Second Circuit," which remains true today. *Id.* at *1. This Court thus sees no reason to depart from its prior interpretation of the INA, which has only been bolstered by recent persuasive authority from the Fifth Circuit and other judges in this District. *See, e.g.*, *Buenrostro-Mendez v. Bondi*, Nos. 25-20496, 25-40701, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Deras Arana v. Arteta*, No. 26 Civ. 240 (GHW), 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026); *Weng v.*

*Genalo*, No. 25 Civ. 9595 (JHR), 2026 WL 194248 (S.D.N.Y. Jan. 25, 2026).

Flores Pacheco seeks to avoid *Chen* on two grounds, but admits that "if the Court does not find his case distinguishable from *Chen*" on those grounds, "then *Chen* will control the outcome of this case." Reply at 3. Because Flores Pacheco's distinctions are legally irrelevant, *Chen* controls.

First, Flores Pacheco argues that because the 2023 immigrant detainer filed in connection with his drunk-driving offense and the 2026 immigration arrest warrant were purportedly issued "pursuant to [Section] 1226," the Executive Branch indicated its past-and-present understanding of the INA. *Id.* at 1-2. But this Court rejected an almost-identical argument in *Chen*, where the petitioner's initial arrest warrant and order of release were also purportedly issued under Section 1226. 2026 WL 100761, at *5, *14. Just as in *Chen*, Flores Pacheco's "status as an applicant for admission has remained unchanged," regardless of the "executive's invocation of a procedural requirement" that it need not have invoked. *Id.* at *13-14 & n.8 (internal quotation marks omitted). Flores Pacheco does not dispute that he is an applicant for admission, nor does he dispute that an examining immigration officer has determined that he is not clearly and beyond a doubt entitled to be admitted. *See* Form I-213 at 2 ("Flores [Pacheco] has no lawful entries or admissions to the United States."); Form I-200 ("I have determined that there is probable cause to believe that . . . Flores Pacheco [is] removable from the United States."); Notice to Appear (similar). So he "is properly detained without bond under Section 1225(b)(2)(A)." *Chen*, 2026 WL 100761, at *13-14.

Second, Flores Pacheco seeks to further distinguish *Chen* because he has been in the country for almost sixteen years, while the petitioner in *Chen* had been present for just over two years. Reply at 2-3. But this Court could not have been clearer in determining that "Section 1225(b)(2)(A) covers all noncitizens present in the United States who have not been admitted (and

are not crewmen, stowaways, or subject to Section 1225(b)(1)) *no matter how long they have been present*." *Chen*, 2026 WL 100761, at *10 (emphasis added); *accord id.* at *13 (emphasizing that aside from the three categories of noncitizens excepted, "Section 1225(b)(2)(A) . . . covers all applicants for admission . . . regardless of how long they have been present"). Flores Pacheco asks "how can the Due Process Clause of the Constitution allow an individual living in the United States for fifteen years to be apprehended without notice, and then be subject to mandatory detention without bond, all because of his unlawful entry to the United States . . . in 2010?" Reply at 2. The answer, as this Court explained in *Chen*, is that "[d]etention during removal proceedings is a constitutionally valid aspect of the deportation process," and "due process does not require an initial bond determination" for noncitizens detained under "provision[s] mandating detention pending removal proceedings just like Section 1225(b)(2)(A)." 2026 WL 100761, at *14 (citation modified). Because Section 1225(b)(2)(A) properly applies to Flores Pacheco, the length of his unlawful presence in the United States does not compel a different due process conclusion than the one this Court reached in *Chen*. Instead, what may matter is the length of Flores Pacheco's detention, and since he has been detained for at least a month shorter than Chen had been, like in that case, "any constitutional argument for habeas relief separate from the statutory one raised here, *if possible*, would be premature." *Id.* (internal quotation marks omitted).

Until the Supreme Court or the Second Circuit reaches a different conclusion to this difficult and important question of statutory interpretation, the undersigned is compelled to treat like cases alike. So under this Court's analysis in *Chen*, Flores Pacheco's challenge to his detention without bond fails.

8

## IV.  Conclusion

For the above reasons, Flores Pacheco's Petition for a writ of habeas corpus is denied.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: February 10, 2026
      New York, New York

                                          JOHN P. CRONAN
                                    United States District Judge